# AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Rachel L. Robinson, being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION

1. I make this affidavit in support of an application for a criminal complaint charging Schmitt A. PARDO (DOB --/--/1994) of --- Plain Street, First Floor, Providence, RI, with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and Wire Fraud in violation of 18 U.S.C. § 1343 (Attempt and Aiding and Abetting).

2. The facts set forth in the Affidavit are based on my personal observations, my training and experience, information obtained from other agents, witnesses, and records obtained during the course of the investigation.  Because I submit this Affidavit for the limited purpose of showing probable cause, I have not included in this Affidavit each and every fact that I have learned in this investigation.  Rather, I have set forth only facts sufficient to establish probable cause to issue an arrest warrant for the individuals identified herein and to search the email accounts set forth herein.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.  AFFIANT BACKGROUND

3. I am a Special Agent/Criminal Investigator with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and as a Special Agent of the United States Department of Homeland Security, I am authorized as an officer of the United States to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, and 19 of the United States Code.  I have been employed by HSI since May 2007.  Prior to that assignment, I was employed as a Customs and Border Protection Officer with Customs and Border Protection for over 4 years.  I am currently assigned to conduct investigations in the Resident Agent in Charge (RAC) Providence Office of HSI. I have prepared numerous affidavits in support of applications for federal search and arrest warrants.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

### III.   PROBABLE CAUSE

4. From at least January 6, 2020 through February 18, 2020, a group of individuals has been engaging in a scheme to obtain money under false pretenses by targeting elderly individuals in a scam that is commonly referred to as a "grandparent scam." From victim reports in both Rhode Island and Massachusetts, victims have reported events similar to those described herein: in general, victims have been called by a male (and in one instance a female) and were told that a family member, often a grandchild, had been in a car accident and was arrested, and was in need of money for bail. The victims were directed to obtain cash and were told that a courier would arrive later in the day to pick up the cash or were directed to a drop off location to meet a courier. Thereafter, the courier retrieved the cash from the victims. From the ongoing investigation, law enforcement has been able to identify numerous incidents in which a male in a white van, identified as a white Chevrolet Express van, arrived to retrieve the cash from the victim or met at another location to pick up the cash. The events reported by some of the victims are listed herein.

5. A Weston, MA victim, H.J., reported that on January 10, 2020, he received a phone call from a number he did not recognize and that the person stated that his grandson had been in an accident and that he had been arrested for texting while driving. Then, a second person, who claimed to be the H.J.'s grandson, began to speak. H.J. believed that the second person to speak on the call was his grandson because he referred to him by his nickname that only close friends and family know. Thereafter, the original caller explained that he was the father of one of H.J.'s grandson's friends and that he was assisting him in court. He said that the victim's grandson was in court and that bail had been posted at $28,000 but that if the victim could get him the money quickly, the bail would only be $14,000. The caller said that a courier would be sent to his residence to retrieve the money. H.J. went to the bank via taxi, withdrew $14,000 in cash, returned home, and called the original caller back. H.J. remained on the phone with the original caller until the courier arrived. H.J. stated that at approximately 2:08 PM, a white Chevy Express van arrived. A Hispanic male party exited the van and approached H.J. The Hispanic man said that his name was "Justin" and asked H.J. to confirm his name, which

he did. H.J. asked the courier for a receipt but the man on the phone said that he would provide a transaction number.

6. Similarly, on February 4, 2020, J.J., a female resident of Portsmouth contacted the Portsmouth Police Department (Portsmouth PD) and advised that earlier that day she received a call from a female claiming to be her niece. Her "niece" was crying and was very distraught. The "niece" reported that she was in legal trouble following a car accident, that she needed money for a bond, and she then gave the phone to a male party. The male identified himself as a lawyer and directed J.J. to obtain $9,000 in cash and drive to a location with the cash. When J.J. said that she could not drive, the male stated that someone named "David Hernandes" would come to pick up the money. J.J. went to the bank with withdrew $9,000 in cash. Thereafter, a white van arrived at her home and a young Black male approached her residence, and took the envelope with cash. After giving the courier the cash, J.J. spoke to her niece and her niece told her that she had not been in an accident and advised her aunt to call the police. Further investigation from Portsmouth PD determined that the van arrived at the victim's home at approximately 13:43. Surveillance cameras from a nearby store showed a white Chevrolet van driving towards the victim's home and away from the victim's home.[1]

7. On February 7, 2020, Warwick Police Department (WPD) took a report of an elder fraud similar to the other incidents described herein. WPD recognized this scam to be like other incidents reported in multiple jurisdictions throughout February 2020. L.S., 84 years of age, stated at approximately 1100 hours, he received phone call from male subject identifying himself as Michael Swartzman from the Cranston Police Department, claiming that L.S.'s grandson (identified by name) was involved in a motor vehicle accident. The subject stated his son was friends with L.S.' grandson and that he was giving him a courtesy call. The male stated that his grandson had been involved in a motor vehicle accident, in which two females were injured, one of which was pregnant. As a result of the accident, his grandson was arrested and was being held in jail. The male then requested that $14,000 be dropped off and said that he was not able to talk further about the investigation. L.S. reported that he then spoke to the person who claimed to be his grandson on the phone, however he thought that his voice sounded

---

[1] In the initial report taken from the victim, the time of the courier arrival was listed as 1600.

3

different from his grandson. His "grandson" claimed he did not feel well which is why he sounded different.

8. L.S. retrieved some money from his household and responded to his bank to withdraw the difference so he had the total amount of $14,000 that had been requested. L.S. stated he placed the $14,000 in a FedEx envelope and provided it to his personal driver R.V. L.S. reported that R.V. took the envelope and responded to an address on Green Hill Way, Warwick, provided by the caller and met with a male who was in a white van. L.S. reported that R.V. gave the subject the package with the $14,000 cash.

9. A neighbor of L.S. reported seeing a white van on February 7, 2020 sitting outside his property for an extended period. The neighbor lives in the area of L.S. The neighbor took a picture of the van and said that he believed there were two subjects in the van. The neighbor provided the photograph and WPD Det. Smith observed the van to be an older model Chevrolet cargo van, which contained a discoloration on the driver's side hood and what appears to be a gas stain below the gas tank. After reviewing the picture of this van, Det. Smith observed it to have the same discolorations / markings as the white Chevrolet van that was see in other jurisdictions who reported a similar scam.

10. WPD Det. Smith retrieved video surveillance from a residence near where the cash was delivered. Upon review of the footage, Det. Smith observed a white van turn onto Green Hill Way from Briarbook Drive at 1425 hours. Det. Smith observed the same van to leave Green Hill Way at 1428 hours. The surveillance observations were consistent with the times of the delivery reported by L.S.

11. On February 18, 2020, the Little Compton Police Department (LCPD) received a report from J.M., a male resident of Little Compton. J.M. reported that he received a call from a female who identified himself as his granddaughter. She said that she had been arrested and needed bail money. A male was then placed on the phone and identified himself as an attorney, "Bob Cole." "Cole" told J.M. that his granddaughter had crashed into a police cruiser while taking a selfie. "Cole" said that his granddaughter would need $9,000 in cash to be bailed out of jail. J.M. was told to give the money to a bail bondsman who would transfer the money to jail for bail. Before J.M. went to the bank, he called the LCPD. With LCPD, J.M. called "Bob Cole" back and told him that he had retrieved $9,000. Cole told him to put the money in an envelope and write a specific case

number on the envelope, which he claimed was the granddaughter's case number. "Cole" called later and advised that the bail bondsman would be arriving shortly.

12. LCPD arrived at J.M.'s house and observed a Honda Accord, HN-231, parked in the driveway and a male standing at the front door of J.M.'s house. They approached the male, who was identified as Schmitt PRADO. LCPD asked him what he was doing at the residence and he answered "I don't know." J.M. reported that after PRADO had rung his doorbell, he answered his door and asked PRADO if he was the courier, to which he responded "yes."

13. PRADO was arrested by the LCPD. He was given his Miranda rights and agreed to be interviewed. He was interviewed by both LCPD and your affiant. In summary, he stated that he was told by a friend that there was a "possible play in place" and that he would be texted an address. His friend sent him J.M.'s name and address and the amount of money he was to pick up. PRADO explained that he was supposed to pick up money from an older person and that he should identify himself as "Justin." PRADO said that thereafter, he would text his friend to learn where to take the money. PRADO said he was to receive $1,000 in cash for doing the pick-up. PRADO said that his friend told him to text him when he was 14 minutes away from the victim's home, which he did, and that his friend then told him to pull over when he was 2 minutes away from the home. PRADO did as directed and his friend then texted him that the "play" was a "go," upon which PRADO drove to J.M.'s home. PRADO also told me that he "knew this wasn't legit." PRADO also stated that his friend, who gave him the directions for that day, drove a white Chevrolet van and that his friend had done similar cash pick-ups on other days in Warwick and other places.

14. In summary, although our investigation is ongoing, from January 6, 2020 through February 18, 2020, on or about the listed dates, individuals in the following Rhode Island and Massachusetts communities have been identified as victims of this scheme for the listed amounts and a white Chevrolet van has been identified as being involved in each of these incidents. Each of these individuals were over the age of 72, and ranged between 72 and 84 years old.

| Date | Location of Victim | Amount Given by Victims |
|---|---|---|
| January 6, 2020 | Northborough, MA | $12,000 |

| Date | Location of Victim | Amount Given by Victims |
|---|---|---|
| January 10, 2020 | Weston, MA | $14,000 |
| February 4, 2020 | Portsmouth, RI | $9,000 |
| February 5, 2020 | Cranston, RI | $17,000 |
| February 6, 2020 | South Kingstown | $9,400 |
| February 7, 2020 | Cranston, RI | $14,100 |
| February 7, 2020 | Warwick, RI | $14,000 |
| **TOTAL IDENTIFIED TO DATE** | | $89,500 |

## IV. CONCLUSION

15. Based on all of the foregoing facts, I submit that there is probable cause to believe Schmitt PARDO on various days and dates violated Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and Wire Fraud in violation of 18 U.S.C. § 1343 (Attempt and Aiding and Abetting).

I declare that the foregoing is true and correct.

Rachel L. Robinson
Special Agent
Department of Homeland Security,
Homeland Security Investigations

Subscribed and sworn to before me this 19th day of February 2020.

USMJ

6